[Cite as *State v. Cole*, 2012-Ohio-4027.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. Nos. 26190 |
|---|---|
| | 26191 |
| Appellant | |
| v. | |
| | APPEAL FROM JUDGMENT |
| MARY NEELEY AND | ENTERED IN THE |
| MONETTE COLE | BARBERTON MUNICIPAL COURT |
| | COUNTY OF SUMMIT, OHIO |
| Appellees | CASE Nos. 11-CRB-722 |
| | 11-CRB-723 |

DECISION AND JOURNAL ENTRY

Dated: September 5, 2012

---

MOORE, Presiding Judge.

{¶1} Appellant, the State of Ohio, appeals from the judgment of the Barberton Municipal Court. This Court reverses.

I.

{¶2} In February and March of 2011, agents of the Ohio Department of Public Safety, ("ODPS") entered the Manchester Tavern to investigate a complaint of gambling at this establishment. Based upon the activities that the agents allegedly witnessed at the Tavern, Agent Cynthia Armsey signed an affidavit to obtain a search warrant of the Tavern. After issuance of the warrant, ODPS agents searched the premises and seized property from the Tavern. Agent Armsey also signed criminal complaints against the owner of the Tavern, Monette Cole, and an employee of the Tavern, Mary Neely (collectively "the Defendants"). The complaints charged Ms. Cole with two counts of operating a gambling house in violation of R.C. 2915.02 and

charged Ms. Neely with two counts of gambling in violation of R.C. 2915.06(A). The Defendants pled not guilty and filed motions to suppress, arguing that the ODPS agents did not have the authority to conduct the search and that the warrant was not based upon probable cause.

{¶3} The case was assigned to Judge Greg Macko, who had signed the search warrant at issue. To avoid a potential conflict of interest, Judge Macko referred the issue of probable cause only to Judge David E. Fish for resolution. After a hearing, Judge Fish determined that the warrant was based upon probable cause, and referred the matter back to Judge Macko for resolution of the remaining issues raised in the Defendants' motions to suppress. On October 26, 2011, the trial court determined that the ODPS agents had the authority to conduct the search and denied the defense motion to suppress the evidence seized as a result of the search. However, the trial court determined that ODPS "lacked the authority to file charges against the defendants for gambling offenses" and dismissed the charges.

{¶4} The State timely appealed from the entry dismissing the charges and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN HOLDING THAT [ODPS] HAD NO AUTHORITY TO FILE GAMBLING CHARGES AGAINST THE [DEFENDANTS] AND THE TRIAL COURT ERRED IN DISMISSING THE CHARGES.

{¶5} In its sole assignment of error, the State argues that the trial court erred in dismissing the charges against Ms. Cole and Ms. Neely. We agree.

{¶6} As an initial matter, review of the trial court record indicates that the Defendants *did not challenge the sufficiency of the criminal complaints*. Instead, the Defendants challenged the authority of the ODPS agents to conduct the search, argued that the search warrant was not

based upon probable cause, and requested that the evidence seized from the search be suppressed. Ruling on these issues in its October 26, 2011 journal entry, the trial court determined:

> It is clear that the [ODPS] has the statutory [sic] to enforce laws pertaining to liquor establishments. Therefore, the *agents would have the authority to conduct searches*, based on probable cause. The issue as to whether evidence of gambling violations that could also include liquor violations appears to be a logical conclusion. Therefore, *the Court upholds the evidence* seized in the search.

(Emphasis added.) However, the trial court then determined,

> The confusion arises then in the filing of charges of gambling and subsequent arrests. Section 5502 of the ORC clearly limits the Department of Public Safety's enforcement powers to that of liquor violations and not general laws of the state, including gambling violations.
>
> Therefore, *the Court finds that the Department of Public Safety lacked the authority to file charges against the defendants* for gambling offenses and subsequently [sic], the charges are dismissed.

(Emphasis added.) The State indicates in its brief that the trial court granted the motions to suppress; however, the trial court's judgment entry indicates that it actually denied the Defendants' motions. The parties cite several cases pertaining to the suppression of evidence seized as a result of a search or seizure that was argued to have been conducted by an individual in excess of her statutory authority. However, because the trial court denied the motions to suppress, and the parties have not challenged that ruling, these cases are of limited value in our discussion. *See State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316 (police officer's stop of a motorist outside of officer's territorial jurisdiction not a per se unreasonable seizure under the Fourth Amendment), *State v. Robinson*, 5th Dist. No. 2003CA00235, 2004-Ohio-1571, (ODPS agents had authority to stop motorist suspected of OVI when agents were on the retail permit premises investigating violations of Title 43 and witnessed defendant become intoxicated), and *State v. Droste*, 83 Ohio St.3d 36 (1998) (ODPS agents did not have authority to stop a motorist

on suspicion of OVI under facts there presented, but such lack of authority did not require suppression of evidence.). Here, although the trial court denied the motions to suppress, it, apparently sua sponte, dismissed the complaints. As the parties have not challenged the trial court's denial of the motions to suppress, we will confine our review to the remaining issue raised by the State, namely: whether the trial court erred in dismissing the charges.

{¶7} A trial court's dismissal of criminal charges is reviewed for an abuse of discretion. *State v. Busch*, 76 Ohio St.3d 613, 616 (1996). The term "abuse of discretion" implies that a trial court's decision is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). A trial court possesses the inherent authority to dismiss charges sua sponte. *Busch* at 615. Crim.R. 48 governs the procedure by which a trial court may dismiss a complaint over the State's objection; however, "the circumstances under which this may occur are not enunciated within the criminal rules." *State v. Arroyo*, 9th Dist. No. 99CA007330, 2000 WL 223509, *1 (Feb. 23, 2000). Although "the rule does not limit the reasons for which a trial judge might dismiss a case," the rule does require that "[i]f the court over objection of the state dismisses an indictment, information, or complaint, it shall state on the record its findings of fact and reasons for the dismissal." *Busch* at 615; Crim.R. 48(B).

{¶8} Here, the sole rationale provided by the trial court for dismissal of the complaints appears to be the trial court's determination that "the Department of Public Safety lacked the authority to file charges against the defendants," because R.C. 5502.14 does not confer upon ODPS agents the authority to enforce violations of the general criminal code under Title 29. Although generally a trial court's decision to dismiss a complaint is reviewed for abuse of discretion, the trial court's determination that ODPS agents lack the statutory authority to file

complaints alleging violations of the criminal code raises a question of law, which we review de novo. *See State v. Brown*, 9th Dist. No. 25206, 2010-Ohio-4863, ¶ 7.

{¶9}    R.C. 5502.14(B)(1) provides, in relevant part, that an ODPS enforcement agent "has the authority vested in peace officers pursuant to section 2935.03 of the Revised Code to keep the peace, to enforce all applicable laws and rules on any retail liquor permit premises, or on any other premises of public or private property, where a violation of Title [43] of the Revised Code or any rule adopted under it is occurring * * *."  In addition, R.C. 5502.14(B)(3) and (4) provide,

> (3) *Enforcement agents who are on, immediately adjacent to, or across from retail liquor permit premises and who are performing investigative duties relating to that premises*, enforcement agents who are on premises that are not liquor permit premises but on which a violation of Title [43] of the Revised Code or any rule adopted under it allegedly is occurring, and enforcement agents who view a suspected violation of Title [43] of the Revised Code, of a rule adopted under it, or of another law or rule described in division (B)(1) of this section have the authority to enforce the laws and rules described in division (B)(1) of this section, *authority to enforce any section in Title [29] of the Revised Code or any other section of the Revised Code listed in section 5502.13 of the Revised Code if they witness a violation of the section under any of the circumstances described in this division,* and authority to make arrests for violations of the laws and rules described in division (B)(1) of this section and violations of any of those sections.
>
> (4) The jurisdiction of an enforcement agent under division (B) of this section shall be concurrent with that of the peace officers of the county, township, or municipal corporation in which the violation occurs.

(Emphasis added.)

{¶10}    Here, the parties stipulated that Agent Armsey had entered the Tavern, which was a retail liquor permit premises, to investigate a complaint of gambling.  Gambling upon a retail liquor permit premises is specifically prohibited by the rules promulgated by the ODPS.  Ohio Adm.Code 4301:1-1-53(B) provides that "[n]o person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ, or allow to be kept, exhibited, or used in,

upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for any gambling in violation of Chapter 2915 of the Revised Code." Therefore, because these alleged violations occurred on a retail permit premises during the course of her investigation of behavior prohibited under the rules promulgated by the ODPS, Agent Armsey had enforcement powers concurrent with that of the police officers to enforce violations of Title 29. *See* R.C. 5502.14(B)(1), (3)-(4). Thus, the trial court's determination that the ODPS agents lacked the authority to enforce gambling laws pursuant to Title 29 under the facts of this case was in error. However, even were we to determine that Agent Armsey exceeded her statutory powers as an ODPS enforcement agent, it would not necessarily follow that she lacked the authority to sign a complaint requesting prosecution of the alleged offenses.

{¶11} A review of the record indicates that Agent Armsey signed the complaints which charged the defendants with the gambling violations, and the parties stipulated that she filed the criminal complaints. The filing of an affidavit alleging violations of the criminal code is governed by the procedures set forth in R.C. 2935.09. These procedures differ depending upon whether the complainant is a "peace officer" or a "private citizen having knowledge of the facts." R.C. 2935.09(C) provides that a peace officer seeking to commence prosecution may file an affidavit charging the offense directly with the clerk of court. When filed, this affidavit becomes the complaint. *See State v. Jones*, 11th Dist. Nos. 2010-P-0051, 2010-P-0055, 2011-Ohio-5109, ¶ 33. However, a private citizen's affidavit charging a violation must first be forwarded to a "reviewing official" before prosecution may be commenced. R.C. 2935.09(A); *see also State v. Mjobi*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 21. Generally, in such a case, the affidavit is incorporated in a formal complaint filed by the prosecuting attorney. *See Jones* at ¶ 33.

**{¶12}** R.C. 2935.01(B) provides that the term "peace officer" as used in that chapter includes an "enforcement agent of the department of public safety designated under section 5502.14 of the Revised Code." Here, the parties do not dispute that Agent Armsey was an enforcement agent of the ODPS, and thus was a "peace officer" within the meaning of R.C. 2935.09(C). Therefore, we cannot discern how the act of filing the criminal complaint alone exceeded Agent Armsey's authority. Further, even if Agent Armsey's affidavit could be said to constitute a "private citizen complaint," a failure to comply with the provisions of R.C. 2935.01(B) does not automatically necessitate dismissal of the charges. *See Mbodji* at ¶ 21.

**{¶13}** Unlike a procedural error in the filing of a complaint, a complaint that fails to comply with Crim.R. 3 has a jurisdictional defect. *See id.* at paragraph two of the syllabus. Pursuant to Crim.R. 3, a criminal complaint must state the essential facts of the offense charged, the numerical designation of the applicable statutes, and must "be made upon oath before any person authorized by law to administer oaths." There is no limitation in the rule as to who may sign a complaint. Thus, we cannot discern in what way Agent Armsey's signature upon the complaints alone would require dismissal of the charges.

**{¶14}** Therefore, we can identify no finding within the trial court's entry that indicates how the act of signing the criminal complaints exceeded Agent Armsey's authority. As expressed above, if such acts were in excess of her authority, no rationale is offered for *dismissal* of the complaints as is required pursuant to Crim.R. 48(B). Thus, we conclude that the dismissal was unreasonable or arbitrary and amounted to an abuse of discretion.

**{¶15}** Accordingly, the State's sole assignment of error is sustained. The trial court's judgment is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
CARLA MOORE
FOR THE COURT


CARR, J.
CONCURS

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶16} I concur in the majority's judgment. However, I believe the discussion of the scope of an ODPS agent's authority is unnecessary. As the majority notes, Agent Armsey is a "peace officer" for the purposes of R.C. Chapter 2935. *See* R.C. 2935.01(B) ("'Peace officer' includes * * * [an] enforcement agent of the department of public safety designated under

section 5502.14 of the Revised Code * * *."); *see also* R.C. 5502.14.   Under R.C. 2935.09(C), a peace officer may file an affidavit with a reviewing official or a clerk of court in order to initiate a complaint.   R.C. 2935.09 places no requirement that the affidavit must charge an offense within the scope of the peace officer's enforcement authority; therefore, regardless of whether Agent Armsey was empowered to enforce the restrictions on gambling, she could still file an affidavit charging the offense.   Thus, the trial court's stated reason for dismissing the complaint was incorrect, and, hence, its sua sponte dismissal  was unreasonable.

**{¶17}**   Accordingly, I concur in the majority's judgment.


APPEARANCES:

MICHELLE L. BANBURY, Assistant Prosecuting Attorney, for Appellant.

DONALD MALARCIK, Attorney at Law, for Appellees.